## BUTCHART et al. v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. February 26, 1924.)

### No. 3919.

**1. Monopolies ☞31—Indictment held sufficient.**

An indictment alleging that officers and agents of certain cement manufacturers located in three named states by concerted action carried on interstate business without competition as to price, by preventing, pursuant to an agreement, companies located in certain districts from selling cement in other districts, otherwise than on arbitrary and noncompetitive prices fixed in advance, and by reason thereof consumers have been compelled to pay prices greatly in excess of the prices at which they could have secured the cement, but for the combination, *held* sufficient, under Act July 2, 1890, §§ 1, 2 (Comp. St. §§ 8820, 8821).

**2. Monopolies ☞31—Letter containing complaint to government held admissible.**

In a prosecution for combining and monopolizing interstate trade in cement a letter to the government containing a complaint *held* admissible to meet defendant's contention that the prosecution was instituted at the instance of a government witness.

**3. Monopolies ☞31—Evidence of efforts to defeat reduction of freight held admissible.**

In a prosecution for combining to monopolize interstate trade in cement, evidence of efforts of parties to the combination to defeat a proposed freight reduction on cement from a competitor's plant *held* admissible.

**4. Criminal law ☞783(1)—Letters to defendants, suggesting fixing prices, held admissible.**

In a prosecution for combining to monopolize interstate trade in cement, letters written by third persons to defendants, suggesting fixing of prices, *held* admissible, where the court charged that they should not be considered unless defendants acquiesced in or acted on these suggestions.

**5. Criminal law ☞829(1)—Refusing request covered by charge not error.**

Where the charge as a whole covered every pertinent point, it was not error to refuse requested instructions.

In Error to the District Court of the United States for the District of Oregon.

R. P. Butchart and Clark M. Moore were convicted of criminal charges, and they bring error. Affirmed.

For opinion below, overruling demurrer, see U. S. v. Cowell, 243 Fed. 730.

Teal, Winfree, Johnson & McCulloch and A. B. Winfree, all of Portland, Or., for plaintiffs in error.

John S. Coke, U. S. Atty., and Lester W. Humphreys, Sp. Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. [1] By sections 1 and 2 of the Act of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies" (26 Stat. 209 [Comp. St. §§ 8820, 8821]), it is provided, among other things, as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof," be punished in a prescribed way.

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof," be punished in a prescribed way.

Based upon those provisions of the statute, an indictment was found and presented to the court below against the plaintiffs in error and various other named persons, containing two counts, the first of which alleged, in substance, that between August 1, 1914, and the filing of the indictment, Portland cement was manufactured at various places in the state of California and west of the Cascade Mountains in the states of Washington and Oregon, by certain companies classified as the Northern California companies, the Southern California company, the Washington companies, and the Oregon company; and there put upon the market in large quantities; that such cement was and is a useful and necessary article of merchandise, greatly in demand for various named structures; that the defendants are officers of certain of those companies so engaged in the manufacture and sale of such cement; that practically all of such cement consumed during the time mentioned was manufactured by those concerns, during which time (with an exception not important to notice) they—

"have respectively sold large portions of the cement so manufactured by them to consumers of and dealers in such cement, whose several places of consumption and business have been situated in others of said states than the one wherein said cement was so manufactured by said concerns, respectively, and consigned other large portions thereof to such dealers and to their own agents in such other states for sale there by such dealers and agents; that in pursuance of such sales and upon such consignments said concerns respectively have been continually shipping said cement to such consumers, dealers, and agents in such other states, the number of such consumers, dealers, and agents being so great. as said grand jurors upon their said oaths, charge the fact to be, that it is impracticable, if not impossible, to set forth the names thereof in this indictment; that in and by so manufacturing, selling, consigning, and shipping such cement into other states than the state of the manufacture thereof, each of said concerns, throughout said ten years, has been engaged in trade and commerce among the several states of the United States within the meaning of the act of Congress approved July 2, 1890, and entitled 'An act to protect trade and commerce against unlawful restraints and monopolies'; that the defendants during the time mentioned have been actively engaged in the management, direction, and control of the said business of said concerns, each well knowing the unlawful nature of the said transactions, and by concerted action have unlawfully and knowingly carried on the said business of the said concerns without any competition as to the localities in said states of Washington, Oregon, and California, in which they respectively sold said cement [with an exception not important to set out], and without any competition as to the prices at which they would respectively sell such cement in said state of Oregon west of said Cascade Mountain range, * * * and by concerted action prevented said Southern California company from selling or consigning for sale its cement either in Washington or Oregon, said Northern California companies from selling or consigning for sale their cement in Washington, said Washington companies from selling or consigning for sale their cement either in Oregon or California, and said Oregon company from selling or consigning for sale its cement either in Washington or California, and unlawfully and

knowingly have by concerted action prevented said Northern California companies and said Oregon company from selling or consigning for sale their cement in Oregon otherwise than upon arbitrary and noncompetitive prices, fixed and agreed upon between them in advance of such sales and consignments for sale, and in consequence of said unlawful conduct on the part of said defendants, and because of the want of competition in the particulars aforesaid between said concerns, all consumers of such cement in said localities in said states of Oregon, Washington, and California have been deprived of the benefits of competition as to the particulars aforesaid between said concerns so manufacturing and furnishing the same as aforesaid, and have been compelled to pay for such cement arbitrary prices, and prices greatly in excess of the prices at which they would have secured such cement, if said defendants had not engaged in said unlawful combination in restraint of such trade and commerce as aforesaid."

The second count charges that the same defendants during the same period of time—

"then being officers and agents respectively of the several concerns mentioned in the first count of this indictment as being manufacturers of and dealers in Portland cement, and so then having the active management, direction, and control of the business and affairs of said concerns as in said first count set forth, in and by engaging, during said period of time, in the unlawful combination in restraint of the trade and commerce of said concerns in said first count described, and in and by knowingly carrying on the business of said concerns in the manner in said first count specified, the allegations of which said first count concerning all the matters aforesaid being, by reference, incorporated into this count as fully as if they were here repeated, unlawfully have, in the district of Oregon, and within the jurisdiction of this court, monopolized said trade, and commerce, it being a part of the trade and commerce among the several states, against the peace and dignity of the United States, and contrary to the form of statute of the same in such case made and provided."

In effect, according to the averments of the indictment, a combination was entered into between the named manufacturing and selling companies, in the operations of which the defendants were the active agents, by which certain portions of the states of California, Washington, and Oregon were apportioned, within which certain of the manufacturers could make sales of cement and within which others of them could not. If that arrangement did not eliminate competition, it is difficult to see what would. We entertain no doubt of the sufficiency of the indictment. See Addyston Pipe & Steel Company v. U. S., 175 U. S. 211, 241, 20 Sup. Ct. 96, 44 L. Ed. 136; Standard Sanitary Mfg. Co. v. U. S., 226 U. S. 20, 33 Sup. Ct. 9, 57 L. Ed. 107; Eastern States Lumber Ass'n v. U. S., 234 U. S. 600, 610, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788. The plaintiffs in error are the only two of the defendants who pleaded not guilty, and therefore as to whom a trial was had. The only assignments of error urged in their behalf relate to the admission and rejection of certain evidence, and to certain portions of the charge of the court below to the jury, and its refusal to give requested instructions.

[2] The record shows that the president of the Oregon Portland Cement Company was at one time Mr. Aman Moore, of which company the plaintiff in error Clark M. Moore was sales manager from April 14, 1916, and that the plaintiff in error Butchart was made a director and also president of the Oregon Portland Cement Company

December 21, 1915. The first of the alleged errors relied on relates to the admission in evidence of a letter of date February 2, 1915, addressed to the Treasury Department at Washington by the Aberdeen Manufacturing Company, W. R. Lebo & Co., and T. B. Darragh Company, setting out, among other things, in substance, that they are dealers at Aberdeen, state of Washington, in all kinds of building materials, including cement, and complaining of the alleged unlawful combination, stating, among other things, that the city of Aberdeen had in the past been supplied through the writers of the letter with Washington and California manufactured cements—the Darragh Company selling the cement of the Pacific Portland Cement Company; the Aberdeen Manufacturing Company selling that of the Henry Cowell Lime & Cement Company, and the Lebo Company selling that of all three of the Washington companies that have been referred to—and that at the beginning of the year in which the letter was written these changes due to the alleged unlawful combination were made:

"Cement was raised 30 cents per barrel to the consumer, from $1.90 to $2.20 net. The agency held by the Lebo Company of the three Washington cements was taken away from them and given to the F. G. Foster Company, who then opened up a branch business here with a stock of building materials. The Pacific Portland Cement Company notified the Darragh Company that they must quote cement no cheaper than $2.30 net, or 10 cents above the Foster Company price, which naturally eliminated the Darragh Company from securing any cement business. The Henry Cowell Lime & Cement Company wrote the Aberdeen Manufacturing Company that they had withdrawn from the Washington market and that they would ship no more cement to Aberdeen. Now, this action was taken by the California companies the first of the year, in spite of the fact that they could get business at a 30-cent per barrel advance in price and a 50-cent per barrel advance over what they received for cement here during most of the year 1914; the price then being $1.70 net. Also these same California companies are to-day shipping cement into Portland, Or., at a higher freight cost from San Francisco than the freight cost is to Aberdeen, and receiving for this cement in Portland 30 cents per barrel less than they can get for it in Aberdeen, under the present prevailing market price."

The record shows that the letter was not offered by the government as any proof of any of the facts recited in it, as was distinctly stated by the government's attorney at the time, but solely to meet a contention on the part of the defendants that the prosecution was instituted at the instance of the government's witness Aman Moore, and the trial court, in admitting the letter for that limited purpose, was careful to explain clearly to the jury that it was no proof of any fact recited in the letter, and that they should not regard it as tending to prove any such fact, and was careful in its charge to give to the jury the same instruction. Under those circumstances, we are unable to see that the admission of the letter, for the sole purpose of tending to show that the witness Moore was not the cause of the institution of the prosecution, could have been prejudicial to the defendants.

[3] Prejudicial error is also claimed to have been committed by the trial court in the admission of certain letters, telegrams, and other evidence relating to railroad freight rates on cement furnished in the building of the bridge across the Columbia river at Vancouver, the contract for the piers of which had been secured by the Pacific Bridge

Company. It seems that the rate prevailing at the time on cement delivered at Portland, Or., and Vancouver, Wash., was $1.90 a barrel, and that the bridge company had secured from a manufacturer of cement at Irvin, near Spokane, Wash., a bid for the cement needed for the bridge at $1.65, provided the railroad would make a rate of 13½ cents per hundred on cement. That condition being complied with, the bridge company entered into the contract with the Irvin plant. Upon the objection of the California and other Washington companies, the rate was not published by the railroad company, and therefore did not go into effect; but they furnished the cement for the bridge at $1.65, after which, however, the bridge company was not able to buy it, except at a higher price. That evidence was offered by the government and admitted by the court for the consideration of the jury in connection with all of the other facts and circumstances of the case, upon the ground and for the sole purpose thus stated by the court in its instructions to the jury:

"I have permitted the government to introduce evidence tending to show that in 1915 the Spokane, Portland & Seattle Railway Company promised to reduce its freight charges upon Portland cement, from some point in Washington, to Portland and Vancouver, and that the Western Washington cement manufacturers, and perhaps some of the Northern California concerns, combined to defeat such proposed change in freight rates, and that they succeeded in doing so by promising to supply cement from their mills, for the Interstate Bridge, at the price for which cement for this purpose was offered by the Irvin plant, if the rate had been installed. Such action on the part of the Washington and California manufacturers, if proved to your satisfaction, would not of itself constitute a violation of the statute on which this indictment is based, but it would be evidence tending to support the charge of an illegal or unlawful combination. It is entirely lawful for any one to do what he can to prevent a transportation company from putting in a freight rate which he may deem unjust or discriminatory, and which he may think will injuriously and unduly affect his business. Any number of persons who may be similarly situated may join in opposing the institution of such a freight rate. It is admitted that the Western Washington cement manufacturers and some of the California concerns combined, in 1915, to defeat a proposed change or reduction in freight on cement from Spokane or Irvin, in Washington, to Portland or Vancouver, but this action on their part was not in itself unlawful or illegitimate, and did not constitute a violation of the statute; but you have a right to consider their acts and conduct in that matter, and not only a right, but it is your duty, to consider their acts and conduct in reference to this matter, as bearing upon the question as to whether they indicate or tend to support the charge of an unlawful or illegal combination."

We are of the opinion that the court below was not in error in that regard.

[4] A like ruling was made by the trial court regarding certain letters which were offered and received in evidence, and which are sufficiently specified in the following excerpt from the charge of the court, which action we also think without error:

"Certain letters have also been introduced in evidence, written by Aman Moore and addressed to Mr. Butchart, which contain statements or suggestions concerning fixing prices or allotment of territory, by agreement with other manufacturers. The statements or suggestions contained in these letters are not evidence against Mr. Butchart, and do not tend to prove the connection of Butchart with any such agreement or combination, unless it appears that he acquiesced in the suggestion, or acted thereon, or combined

with other manufacturers in accordance with the statements or suggestions so made by Moore. Various letters have also been introduced written by officials, or associates of officials, of cement manufacturers in Washington and California, to defendants Clark, Moore and Butchart. Any statements, suggestions, or requests contained in any such letters are not to be taken or deemed as evidence of the guilt or innocence of the defendants Moore or Butchart, unless Butchart or Moore acquiesced in such statements and acted thereon, or combined with other cement manufacturers in accordance with the statements or suggestions made or contained in the letters; but these letters are a part of the evidence, showing the relation existing between these people, and their conduct and actions, and for that purpose are competent and should be given such weight as you gentlemen may think they are entitled to."

[5] The charge of the court as a whole was very full, and, in our opinion, very clear and fair, and covered every pertinent point in the case. There could therefore have been no error in refusing any of the requested instructions.

The judgment is affirmed.